# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,           CASE NO. 06-20290
                  HON. LAWRENCE P. ZATKOFF

v.

LASHAWN WILSON,

   Defendant.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on July 24, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

On this date, Defendant Lashawn Wilson appeared before the Court for purposes of being sentenced in conjunction with her guilty plea to Count 1 of the First Superseding Indictment filed against her on September 12, 2006. For the reasons set forth herein, the Court hereby imposes the following sentence, which the Court believes is a reasonable disposition for this Defendant. The Court orders that Defendant is sentenced to 48 months imprisonment.

## II. BACKGROUND

**A.**   **UNDERLYING CONDUCT**

On December 31, 2002, the Assistant Vice President of Fifth Third Bank in Southfield, Michigan, contacted agents from the United States Postal Inspector Service (USPIS) regarding the theft of 1000 blank money orders and 500 blank cashier's checks. As of that date, 163 of the stolen money orders and 11 of the stolen cashier's checks had been fraudulently negotiated.

On January 6, 2003, a fraud investigator for Apple Computers also contacted the USPIS and reported that an individual, later identified as Defendant, had placed eight separate orders for Apple computers and mailed thirty-five of the stolen money orders as payment. Although the computers were ordered using eight different names, all of them were to be delivered to 1727 Elsmere St., Apt. 2, in Detroit. Furthermore, one of the orders contained the email address of wlawshawn@aol.com. Defendant's name also appeared on eleven of the money orders in the "purchased by" section and on two of the money orders as the "payee."

On January 9, 2003, following the delivery of an Apple computer shipped in the name of Tristian Allen, federal agents executed a search warrant at the Elsmere address in Detroit. Defendant was present during the search. Defendant initially identified herself as Tristian Allen but later admitted her true identity. Defendant admitted to the agents that she ordered computers under different names from Dell, Compaq, IBM, and Apple by mailing the stolen money orders as payment and having the computers shipped to various addresses in Detroit. During the search, agents recovered original money orders and carbon copies of original money orders payable to Apple Computer Company that used various names, including Tristian Allen. The search further produced a customer invoice from Gateway Computer Company addressed to Tristian Allen at one of the addresses Defendant used to receive the computers. Agents also discovered various personal identification information of five individuals, including social security numbers, dates of birth, and driver's license numbers.

In sum Defendant admitted to using thirty-six stolen money orders totaling $32,116.40 to purchase eight computers, which were shipped to her home address. Furthermore, the search produced eight additional money orders totaling $2563.41, which were completed and ready to be mailed. In total, the money orders amounted to $34,697.81 in losses. Following the search, the

agents arrested Defendant and took her into custody.

Based on Defendant's admissions and the results of the search, on May 24, 2006, a one-count information was filed in this district charging Defendant with mail fraud in violation of 18 U.S.C. § 1341. The Court scheduled Defendant's Final Plea Cut-off for August 1, 2006; however, on July 2, 2006, while she was residing in a half-way house in connection with a state conviction, Defendant absconded and failed to appear before the Court as ordered. Subsequently, on September 12, 2006, a First Superseding Indictment was filed charging Defendant with mail fraud in violation of 18 U.S.C. § 1341, along with an arrest warrant.

Seventeen months later, Defendant was arrested during a meeting with her parol officer in connection with state charges. On January 25, 2008, Defendant appeared before Magistrate Pepe for her initial appearance and, despite having failed to appear once already, was released on a $10,000.00 unsecured bond. Magistrate Pepe scheduled Defendant's arraignment for January 28, 2008.

On January 28, 2008, the date scheduled for her arraignment on the First Superseding Indictment, Defendant failed to appear before Magistrate Sheer. When contacted by the Pretrial Services Officer assigned to the case, Defendant stated that she did not have transportation but would take the bus. Later, Defendant contacted the Pretrial Services Officer, this time from the Motor City Casino, and indicated that she would walk to the Court from that location. Defendant ultimately never appeared on January 28 and was not heard from until her arrest nearly two months later.

On May 13, 2008, Defendant, with counsel, appeared before the Court and pleaded guilty to Count 1 of the First Superseding Indictment. Defendant rejected the government's offer of a plea agreement and, thus, there is no plea agreement in this case.

### B. DEFENDANT

Defendant is a 32-year-old woman who, until the time of her arrest, resided in Detroit. Defendant's parents are not married and also reside in Detroit, as well as several of Defendant's half-siblings. According to Defendant, she had a troubled childhood. Defendant's mother dealt drugs out of the family's home and her stepfather was murdered when she was six-years old. Following the murder, Defendant's mother had a relationship with another man who Defendant stated molested her for approximately two years. After Defendant reported the abuse, she began living with her aunt. Defendant has never been married but has two children: Kyan Murray, age two, and Allure Murray, age seven months. Both children reside in Detroit with their paternal grandmother and Defendant has not had contact with them since her incarceration.

Defendant is in good physical health but did report that she attempted suicide by taking a number of sleeping pills when she was 19-years old. Following the suicide attempt, Defendant was instructed to follow through with mental-health therapy, which she failed to do. A prison counselor eventually diagnosed Defendant with anxiety and obsessive compulsive disorder and prescribed anti-depressants and sleep-aids.

Defendant also has a history of substance abuse. Defendant first consumed alcohol when she was 12-years old and began using marijuana at the same time; Defendant reported smoking 20 "blunts" per day between 1994 and 2005. In 2003 Defendant began using cocaine, consuming a quarter of an ounce per day. Defendant claimed she participated in three drug-treatment programs but this has not been verified. Additionally, Defendant participated in drug-treatment therapy at a half-way house in connection with a state conviction, but absconded from the home without permission on June 2, 2006.

Defendant attended Western High School in Detroit through ninth grade and claims to have

completed her GED. However, records from two vocational centers indicate that Defendant stopped attending classes after short periods of time and never completed a degree program.

Defendant's employment history is not entirely clear. At various times Defendant reported working for several home healthcare facilities in Detroit. Only one of these positions has been verified. Between March 2003 and October 2003, Defendant was employed at Helping Health Care Services in Detroit as a staffing coordinator. Defendant has not worked since being arrested for the instant offense.

### III. PRE-SENTENCE REPORT AND GUIDELINES CALCULATIONS

By statute, Defendant may be sentenced to a term of imprisonment of up to 30 years for Count 1 and/or a fine of up to $1,000,000. The Court has reviewed the Presentence Investigation Report (PSR) in this case and notes the following computations set forth therein. Defendant has a base offense level of 7 for the violation of the provisions of 18 U.S.C. § 1341. In addition to the base offense level, three adjustments have been proposed in calculating the total offense level:

(1) A six-level enhancement pursuant to § 2B1.1(b)(1)(D) because the amount of the loss attributed to Defendant in this case exceeded $30,000;

(2) A two-level enhancement pursuant to § 2B1.1(b)(10) because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification; and

(3) A two-level reduction pursuant to § 3E1.1(a) because Defendant has accepted responsibility for this offense.

As a result of the foregoing adjustments, the proposed total offense level for Defendant is 13.

The PSR also reviewed Defendant's criminal history and assessed seven criminal history points as follows:

(1) An assessment of 3 points pursuant to § 4A1.1(a) for a conviction in 2001 of Attempted Possession with Intent to Distribute less than 50 grams of cocaine;

(2) An assessment of 1 point pursuant to § 4A1.1(c) for a conviction in 2005 of Forgery, Uttering and Publishing, and False Pretenses over $1000 but less than $20,000;

(3) An assessment of 2 points pursuant to § 4A1.1(d) because Defendant was on probation for the 2001 offense at the time she committed the instant offense; and

(4) An assessment of 1 point pursuant to § 4A1.1(e) because Defendant committed the instant offense within two years of being released from imprisonment.

According to the advisory Guidelines, seven criminal history points place Defendant in a criminal history category IV. Based on a total offense level of 13 and a criminal history category IV, the advisory Guidelines range is 24 to 30 months. Neither Defendant nor the government filed any objections to the PSR. Accordingly, the Court adopts the proposed adjustments and agrees that the advisory Guidelines range for Defendant is 24 to 30 months.

## IV. SENTENCING MEMORANDA

Neither Defendant nor the government has filed sentencing memoranda in this case. The Court notes, however, that it received a four-page, hand-written letter from Defendant and has taken it into consideration.

## V. SENTENCING HEARING

On July 24, 2008, the Court conducted the sentencing hearing. Prior to rendering Defendant's sentence, the Court heard and considered argument from both counsel for Defendant and the government regarding the appropriate sentence for Defendant. The Court also presented counsel with a proposed sentencing memorandum, which was marked as Exhibit A for purposes of

the hearing, and solicited comments and objections not previously stated on the record.

## VI. ANALYSIS

The overarching goal of the federal sentencing statute instructs the Court to "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing ...." *Kimbrough v. United States*, 552 U.S. ___, 128 S. Ct. 558, 570 (2007) (internal quotation marks omitted). The Court has thoroughly reviewed the file of Defendant, paying particular attention to the PSR, the sentencing letter filed by Defendant, and the statements of government counsel, counsel for Defendant and Defendant herself. As noted above, the crime to which Defendant has pleaded guilty carries a prison term of up to 30 years, and the applicable advisory Guidelines range for Defendant is 24 to 30 months. After giving considerable thought the circumstances of this case, the Court does not believe that a sentence within the advisory Guidelines range is sufficient to serve the sentencing objectives in 18 U.S.C. § 3553(a).

### A. THE ADVISORY SENTENCING GUIDELINES

The Court emphasizes that it has consulted the advisory Guidelines and has taken them into account in sentencing Defendant; in fact the Court, as it must, initiated its assessment of an appropriate and reasonable sentence for Defendant with the advisory Guidelines. *See Gall v. United States*, 552 U.S. ___, 128 S. Ct. 586, 596 (2007). The Court recognizes that advisory Guidelines ranges do not consist of an arbitrary set of numbers, but rather exist as the result of recommendations by an expert commission that studied the sentencing process at great length. Further, the Court has, in this case as in any other case, given heavy weight to the advisory Guidelines in determining an appropriate and reasonable sentence for this Defendant. But the advisory Guidelines are not the Court's only consideration, and the Court may not presume that the advisory Guidelines range is reasonable. *See id.* at 596-97. Rather, the Court must consider all of

the factors in 18 U.S.C. § 3553(a) and must "make an individualized assessment based on the facts presented." *Id.*; *see also Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, and sometimes magnify, the crime and the punishment to ensue."). In an appropriate case, the Court may determine that a within-Guidelines sentence is not sufficient to serve the objectives of sentencing. *See Kimbrough*, 552 U.S. ___, 128 S. Ct. at 564.

The Court varies from the advisory Guidelines in this case because it involves unusual circumstances that dictate such a variance, and because a number of factors in 18 U.S.C. § 3553(a) weigh in favor of a sentence greater than that recommended by the advisory Guidelines. In doing so, the Court is mindful of the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6) (stating the court "shall consider – the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct"). For the reasons set forth below, the Court finds that a variance is warranted in this case.

**B. SECTION 3553(a)(1)**

Section 3553(a)(1) instructs that the Court is to consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]"

   *1. The Nature and Circumstances of the Offense*

The nature and circumstances of this offense are very serious and merit significant punishment. Defendant pleaded guilty to one count of mail fraud; however, this description of the offense does not accurately portray the nature and effect of Defendant's relevant conduct.

The circumstances of the offense are serious. Defendant stole 1000 money orders and 500 cashier's checks from a bank for the purpose of defrauding businesses using the United States mail.

8

Defendant ordered computers from several companies and paid for the purchases using the stolen money orders. In addition, Defendant used numerous addresses and the identities of several individuals, presumably stolen, to evade detection. Through this scheme, Defendant managed to purchase at least eight computers. However, at the time she was apprehended, Defendant had used less than three percent of the instruments she stole but had managed to cause nearly $35,000 in losses. It is clear that Defendant intended to cause, and would have caused, far more harm if her enterprise had continued.

While the circumstances of the offense are severe, they are relatively inoffensive when compared to the nature of the offense. In isolation, Defendant's conduct appears to merely involve money. Yet the Court cannot view Defendant's acts in isolation; it must examine the consequences and potential ramifications of Defendant's conduct. Fraud is a serious crime and when fraud is effectuated through financial instruments and institutions using the United States mail, the crime affects more than just the defrauded party. The United States' economy largely depends on the soundness and security of its financial institutions and the accuracy and efficient transfer of information. Defendant's offense threatens both. When financial institutions are the victims of theft they must protect themselves by taking measures that affect every aspect of the banking industry and, in turn, the entire economy. The effects of these measures can be felt in lending practices and interest rates and increase the cost of doing business for the largest corporations as well as individual citizens. Similarly, when fraud is carried out using the mail, it undermines and hinders the effective flow of information, which also increases the costs of doing business and harms countless individuals. Finally, the relevant conduct in this case includes at least five instances of identity theft, which causes incredible harm to individuals financially, personally, and emotionally. Thus, by its very nature, Defendant's crime involves more than simply mail fraud, and a significant sentence is

9

necessary. Therefore, the Court concludes that the unique circumstances of this case distinguish it from the typical case contemplated by the advisory Guidelines.

   2. *The History and Characteristics of the Defendant*

Defendant has had a troubled past, involving several encounters with the criminal justice system. Defendant's claims that her childhood was difficult; she states that she lived with a mother who sold drugs out of the family's home and that her stepfather was murdered. However, the Court finds that these facts do not excuse any of Defendant's conduct.

Defendant is a high school drop-out and has been unable to maintain steady employment. Defendant's claims that she obtained a GED and held several long-term positions with home healthcare providers have been unsubstantiated. Instead, Defendant has consistently engaged in criminal behavior and avoided and/or ignored her legal and personal obligations. According to the PSR, Defendant has three aliases, five different dates of birth, and three different social security numbers. Defendant violated the terms of two prior criminal sentences, necessitating further legal action or incarceration and imposing an increased burden on both law-enforcement agencies and the courts. Most recently, Defendant failed to appear on two different occasions in connection with this case. First, in 2006 Defendant failed to appear for her Final Plea Cut-off date[1] and was a fugitive for over seventeen months, requiring the use of valuable law-enforcement resources that could have been put to better use elsewhere. When Defendant was finally apprehended, she failed to appear for her arraignment on the First Superseding Indictment, which, as before, wasted countless law-enforcement resources. Moreover, Defendant has had no contact with her two young children and has instead chosen to leave them motherless for the period of her incarceration. It is apparent to the

---

[1]The same incident constituted the probation violation in connection to Defendant's 2005 state conviction.

10

Court that Defendant is totally lacking in responsibility, is unable or unwilling to appreciate the consequences of her actions, and is unmotivated to better herself.

The Court has also had the opportunity to observe Defendant and hear her comments on several occasions. The Court is unimpressed with Defendant and finds that, although she has accepted responsibility for her crimes, she is not genuinely remorseful for the damage she has caused. The Court has reviewed Defendant's letter and finds that it is indicative of her overall tendency to create excuses for her actions. Consequently, the Court is not persuaded that the Defendant's history and characteristics are such that would warrant a less severe punishment than the one to be imposed.

**C. SECTION 3553(a)(2)(A)**

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" In this case, the Court believes that a term of imprisonment of 24 to 30 months is not sufficient to accomplish any of these objectives.

As discussed above, the offense involved in this case is extremely serious. In fact, the offense is far more serious than the term "mail fraud" implies. Accordingly, the sentence must be correspondingly serious. Based on its assessment of the nature and circumstances of this case, the Court finds that 24 to 30 months imprisonment does not accurately reflect Defendant's crime. Therefore, a sentence greater than 30 months is necessary to reflect the seriousness of the offense.

Similarly, the Court finds that a higher sentence than recommended in the advisory Guidelines is necessary to promote respect for the law. As mentioned, Defendant has two prior convictions. In 2001, Defendant pleaded guilty to attempted possession with intent to distribute cocaine. After pleading guilty to that charge, Defendant was sentenced to participate in Drug Court

in Detroit for one year by maintaining weekly contact with the Drug Court, keeping weekly logs, refraining from alcohol or drug use, performing community service, attending drug treatment and education classes, and appearing before the Drug Court on a monthly basis for a status conference. Defendant, however, violated the terms of her sentence by failing to appear for a scheduled status conference, failing to attend drug treatment programs, and testing positive for marijuana on several occasions. As a result, Defendant was arrested and sentenced to five years in prison.[2]

In 2005, Defendant pleaded guilty to two counts of forgery, one count of uttering and publishing, and one count of false pretenses for cashing forged checks. Defendant was sentenced to 24-months probation and ordered to pay over $8000 in restitution. However, Defendant violated her probation by failing to return to a residential treatment center on June 2, 2006, and, to date, has paid virtually no restitution.

After reviewing Defendant's prior convictions and sentences, it is apparent that lesser sentences than the one to be imposed in this case have been utterly ineffective at instilling a respect for the law in Defendant. Indeed, Defendant has exhibited a consistent tendency to shirk her legal responsibilities and disregard the seriousness of her conduct. Defendant violated the terms of her Drug Court sentence in 2001 and her probationary sentence in 2005. In relation to the 2005 violation, Defendant failed to appear for her Final Plea Cut-off in the instant case and was a fugitive from the law for over seventeen months. Additionally, once Defendant was finally apprehended, she again failed to appear for her arraignment in direct violation of a court order. This leads the Court to conclude that Defendant has no respect for the law whatsoever. Therefore, a significant term of imprisonment is necessary to promote respect for the law in this case. Furthermore, the

---

[2]Defendant was eventually paroled after serving slightly more than a year of this sentence.

Court finds that a strict sentence in this case will promote respect for the law generally as potential criminals will think twice before using the mail to defraud financial institutions, corporations, and others. Based on its judgement of the unique facts and circumstances in this case, the Court finds this sentence provides just punishment for this offense.

**D. SECTIONS 3553(a)(2)(C) and (D)**

Sections 3553(a)(2)(C) and (D) provide that the Court must consider "the need for the sentence imposed – to protect the public from further crimes of the defendant; and to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" In this case, the Court finds that a lengthy term of imprisonment is necessary to facilitate these factors.

Defendant's history and her tendency to ignore her legal obligations indicates that a lengthy prison term is necessary to protect the public from further crimes. The Court is convinced that lesser sentences are not effective when it comes to reforming Defendant's behavior and deterring her from committing crime. Thus, the only way to protect the public from further crimes is to incarcerate her for a period of time that will be effective in reforming her behavior while also isolating her from the public.

Similarly, the Court finds that a long term of imprisonment is necessary to provide Defendant with the type of educational and other correctional treatment she requires. After examining Defendant's personal history, including her dealings with the criminal justice system, the Court believes that Defendant requires a carefully structured and closely monitored lifestyle in order to achieve necessary educational and rehabilitative goals. Following a suicide attempt, Defendant was instructed to undergo mental-health treatment and counseling, but failed to do so. Likewise, after each of her convictions Defendant failed to abide by the conditions of her sentences. As such, the

Court finds that the most effective way for Defendant to address the difficult issues facing her, to learn a deep respect for the law, to gain a meaningful education and course of drug-abuse treatment, and to be truly rehabilitated, is a significant term of imprisonment in an institution where Defendant is unable to ignore and/or avoid her obligations.

## VII.  CONCLUSION

For the reasons set forth above, it is HEREBY ORDERED that Defendant shall be sentenced to 48 months imprisonment.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff<br>
LAWRENCE P. ZATKOFF<br>
UNITED STATES DISTRICT JUDGE

Dated:  July 24, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 24, 2008.

S/Marie E. Verlinde<br>
Case Manager<br>
(810) 984-3290