UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Case No. 06-20290
Hon. Lawrence P. Zatkoff

LASHAWN WILSON,

    Defendant.
    _____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 2, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

On March 25, 2011, the Court issued a Second Order to Show Cause to John Minock, counsel for Defendant, because his response to the Court's original Order to Show Cause was inadequate. In the Second Order to Show Cause, the Court stated:

> For the reasons set forth above, the Court again ORDERS Mr. Minock TO SHOW CAUSE, IN WRITING, WHY DEFENDANT'S SENTENCING MEMORANDUM SHOULD NOT BE STRUCK because:
>
> (1)     it was not filed at least seven (7) days prior to the date of the re-sentencing hearing, as required by the Court; and
>
> (2)     Defendant has challenged, for the first time, the computation of Defendant's criminal history in the presentence investigation report ("PSR") issued by the probation officer, even though such challenge was required to be filed with the probation officer within 35 days of the date the PSR was provided to counsel.

> In addition, the Court also ORDERS Mr. Minock TO SHOW CAUSE, IN WRITING, WHY:
>
> > (A) the Court should find that Mr. Minock can render effective assistance of counsel to Defendant in this matter; and
> >
> > (B) the Court should allow Mr. Minock to withdraw as Defendant's counsel if the Sentencing Memorandum is stricken for being late.
>
> Defendant's response to this Second Order to Show Cause shall be filed no later than 5:00 p.m. on Monday, April 4, 2011, and it <u>shall contain specific and accurate legal support, including pinpoint citations to authority relied upon</u>, and shall be limited to ten pages and comply with E.D. Mich. L.R. 5.1.

On April 4, 2011, at 5:01 p.m., Mr. Minock filed his response. For the following reasons, the Court concludes that Mr. Minock (hereinafter, "defense counsel") should be discharged as counsel for Defendant based on the ineffective assistance of counsel he has rendered, and continues to render, to Defendant in this case.

**A.    "Misimpressions"**

Defense counsel begins his response to the Second Order to Show Cause by stating that the Court's Second Order to Show Cause contains the "misimpressions" that defense counsel could have consulted with Defendant "about the accuracy of the PSR and the guidelines scoring during the pendency of her appeal, . . . and that counsel had five weeks in which to prepare the Sentencing Memorandum." The Court was under no such "misimpressions," however, because: (1) as it pertains to accuracy of the PSR and the Guidelines scoring, any competent defense attorney would know that he or she could consult with his or her client about such matters, and (2) as to the fact that he had five weeks to prepare the Sentencing Memorandum, the fact is that he actually had **more** than five weeks to do so.

*1.     Consultation Regarding the Accuracy of the PSR and the Guidelines Scoring*

It is unclear to the Court why defense counsel would state and/or believe that he and Defendant "could [not] have consulted about the accuracy of the PSR and guidelines scoring during the pendency of her appeal[.]" First, it is well-established law in the Sixth Circuit that legal counsel for a criminal defendant has the right to consult - and meet - with his or her client when representing such defendant on an appeal of a conviction and/or sentence. *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (citation omitted) (among "the eleven factors to be considered when evaluating a claim of ineffective assistance of appellate counsel" is: "Did the appellant and appellant counsel meet and go over possible issues?"); *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999) (one of the factors to consider in determining "whether an attorney on direct appeal performed reasonably competently" is "Did the appellant and appellant counsel meet and go over possible issues?"). Therefore, defense counsel had the right to meet with Defendant, and he actually could have met with Defendant, to review the PSR with her at such a meeting to determine the accuracy of the PSR and/or the Guidelines scoring.

Second, in his response to the Second Order to Show Cause, defense counsel acknowledges that he "communicat[ed] with Defendant [by] several letters and short phone calls regarding the appeal." As such, even though defense counsel did not physically meet with Defendant, he still had the opportunity to "communicat[e]" with her about the accuracy of the PSR and/or the Guidelines scoring when sending her letters and/or conversing with her on the phone regarding her appeal.

*2.     Five Weeks to Prepare the Sentencing Memorandum*

The Court shall accept, for the moment, defense counsel's apparent premise that the Court first "notified" counsel of Defendant's sentencing on February 1, 2011, when the Court

3

granted his motion to adjourn the sentencing date from February 15, 2011, to March 15, 2011. Defense counsel contends that the Court had the "misimpression" that he would then have five weeks within which to prepare the Sentencing Memorandum. Defense counsel does not elaborate on this point, nor does he cite any authority in support of it. Accordingly, the Court has (again) consulted a calendar to ensure that it did not overstate the fact that defense counsel had an extensive period of time during which to file the Sentencing Memorandum. After doing so, the Court has (again) determined that, from the date the Court issued its notice that the sentencing had been adjourned, defense counsel had five weeks to prepare the Sentencing Memorandum.

The Court also notes that it initially provided counsel, including defense counsel, with notice of the February 15, 2011, sentencing date on December 15, 2010. Thus, defense counsel actually had approximately seven weeks to prepare a sentencing memorandum before the **February 15, 2011**, sentencing date. When one considers that the Court adjourned the sentencing hearing for another four weeks - at the request of defense counsel - the fact is that defense counsel had **eleven** weeks to prepare a sentencing memorandum on behalf of Defendant.

**B.     Relevance of Accuracy of Guidelines Scoring on Appeal**

Defense counsel states that he "never discussed the accuracy of the guidelines scoring with Defendant prior to meeting with her in person [on February 20 and 22, 2011], **because it was not relevant to the appeal**." (emphasis added). Defense counsel further states that he "and Defendant never discussed the details of the Presentence Report, nor the guidelines calculations, only the length of the sentence and the basis of the appeal, which was not a guidelines issue." The Court finds that these statements are reflective of the deficient assistance defense counsel

4

has provided Defendant before this Court - and, seemingly, on Defendant's appeal before the Sixth Circuit.

As Defendant was appealing her sentence, **any and every** possible error in the record before the district court was relevant to Defendant's appeal. This is especially true with respect to the portion of the PSR calculating Defendant's criminal history because the criminal history score is critical to determining the applicable advisory Guidelines range for Defendant. In other words, the *length* of Defendant's sentence - and, according to defense counsel, the basis of her appeal - is *directly* related to the computation of Defendant's criminal history/the applicable advisory Guidelines.

In this case, the Court calculated the same criminal history (IV) and applicable advisory Guidelines range (24-30 months) for Defendant that was set forth in the PSR. The Court stated as much on the record at Defendant's July 24, 2008, sentencing and included the same calculations in its sentencing opinion filed the same day. Therefore, contrary to defense counsel's argument, "the accuracy of [Defendant's] guidelines scoring" in the PSR (and by the Court) would have been **extremely relevant** to Defendant's appeal of the length of her sentence.

**C.     Motive of Defense Counsel on Appeal**

Defense counsel, who was appointed to represent Defendant as a member of the CJA panel, also states that "Defendant's first lawyer had not objected to the scoring of the guidelines, so there was **no potential appellate issue** regarding the scoring, and **no motive for counsel and Defendant to address them**." The Court finds that statement to be patently misguided and wholly unacceptable. As any competent criminal defense attorney who practices appellate work should know, even if a defendant's legal counsel fails to object to the district court's allegedly erroneous calculation of a defendant's applicable criminal history (at or prior to the sentencing

of that defendant), the appellate counsel for that defendant can raise the issue before the Sixth Circuit Court of Appeals and the issue will be reviewed for plain error. *See, e.g.*, *United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005). In fact, this has been the law in the Sixth Circuit for more than a decade. *See United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).

**D.     Additional Considerations**

In his response to the original Order to Show Cause, defense counsel informed the Court that, during the time period when he should have filed his Sentencing Memorandum, he "was preoccupied in connection with several other cases, . . . [and] those cases are complex and consumed much more time than normal."[1] Therefore, defense counsel "request[ed] that he be permitted to withdraw and new counsel be appointed" if "the Court is inclined to strike the Memorandum due to its lateness."

In making these remarks, defense counsel apparently was making it clear that the Court had no real understanding of his importance and the pressing nature of his important work. As the Court granted defense counsel's request to adjourn the sentencing hearing because of his stated need to address at least one of these "other cases," however, the Court did recognize the pressing nature of his important work. In fact, the Court even adjourned the sentencing hearing for a week longer than defense counsel requested.

In making the remarks set forth above, defense counsel also seems to be making a statement about this case - *i.e.*, that the instant case is somehow less important than those other, complex cases. The Court suspects, however, that Defendant believes that her case is at least as

---

[1] In his response to the Second Order to Show Cause, defense counsel again gave this explanation for his failure to timely file the Sentencing Memorandum, although the word "normal" was replaced by the word "expected."

6

important as those other cases. The Court further suspects that Defendant is probably less concerned about understanding defense counsel's importance and the pressing nature of his important work than she is about having her legal counsel provide effective assistance with respect to her criminal case.

**E.     Conclusion**

In his response to the original Order to Show Cause, defense counsel stated that, "Defendant is entitled to the effective assistance of counsel." As the Court indicated in the Second Order to Show Cause, the Court certainly agrees with that statement. Defendant unequivocally is entitled to the effective assistance of counsel under the Sixth Amendment to the United States Constitution.

For the reasons stated above, the Court concludes that defense counsel has not rendered, and continues to fail to render, assistance to Defendant in this matter that satisfies the level of the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. Accordingly, the Court hereby ORDERS that Mr. Minock's representation of Defendant in this matter is TERMINATED. The Court further ORDERS that new legal counsel be appointed for Defendant immediately upon entry of this Opinion and Order.

IT IS SO ORDERED.

 S/Lawrence P. Zatkoff  
LAWRENCE P. ZATKOFF  
UNITED STATES DISTRICT JUDGE

Dated: May 2, 2011